**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ROBERTO J. ESPINOZA, | § | |
| *Plaintiff* | § | |
| | § | SA-19-CV-01363-XR |
| -vs- | § | |
| | § | |
| MICHAEL POMPEO, SECRETARY, U.S. | § | |
| DEPARTMENT OF STATE, IN HIS | § | |
| OFFICIAL CAPACITY; | § | |
| *Defendant* | § | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

On this date, the Court considered Plaintiff's motion for summary judgment (ECF No. 34) and Defendants' response (ECF No. 36). After careful consideration, Plaintiff's motion is DENIED.

**BACKGROUND**

Plaintiff Roberto J. Espinoza ("Plaintiff") brings this suit based on the U.S. Department of State's denial of his application for a U.S. passport. This dispute over Plaintiff's citizenship arises out of competing records of Plaintiff's birthplace. Plaintiff's birth on October 3, 1970 was registered twice: first, in Piedras Negras, Coahuila, Mexico, and again, two weeks later, in Eagle Pass, Texas. The Mexican registration indicates that Plaintiff was born at the Health Center in Piedras Negras; the Texas birth certificate indicates that he was born in the private home of a midwife, Hortencia Crosby ("Ms. Crosby"), in Eagle Pass. *See* ECF No. 34-2, Exs. 1, 5. Plaintiff, a resident of San Antonio, Texas, alleges that, despite his Mexican birth record, he was born in Texas and is therefore a citizen of the United States.

Plaintiff is the son of the late Ramon Javier Espinoza and Dora Elia Garcia ("Ms. Garcia"), who were both citizens of Mexico. ECF No. 34-1 ¶¶ 1–3. His paternal grandmother, Maria Oralia

Garza Mancha ("Ms. Garza Mancha"), is a naturalized United States citizen who was born in Ocampo, Mexico on May 28, 1925. *Id.* ¶¶ 7–8. She worked as a nurse and took midwifery courses at the Health Center in Piedras Negras, where she eventually met and formed a friendship with Ms. Crosby, a registered midwife in Eagle Pass, Texas. *Id.* ¶¶ 12–15.

On December 12, 2003, Ms. Crosby signed a notarized declaration attesting that she had delivered Plaintiff on October 3, 1970, at her home in Eagle Pass. ECF No. 34-2, Ex. 7. Plaintiff offers several items of documentary evidence recorded at or near the time of his birth in support of this version of events. Ms. Crosby herself signed Plaintiff's Texas birth certificate on October 19, 1970. ECF No. 34-2, Ex. 1. On August 8, 1971, Plaintiff was baptized in Mexico, and his parents reported to the Catholic Parish of San Juan de Mata that his place of birth was Eagle Pass, Texas. *Id.*, Ex. 6. Finally, Ms. Crosby maintained handwritten ledgers noting the children born in her house. *Id.*, Ex. 9. The original ledgers were among the belongings she left in the care of Mario Crosby, her son and the executor of her estate, after her death in 2005. *Id.* In September 2015, Mr. Crosby provided Plaintiff with copies of his mother's records showing that Plaintiff was born at Ms. Crosby's home in Texas on October 3, 1970. *Id.*

Despite the multiple records indicating that Plaintiff was born in the United States, it is undisputed that three days after he was born, his paternal grandmother, Ms. Garza Mancha registered his birth in Mexico, reporting to the Mexican civil registry that he was born and later immunized at the Health Center in Piedras Negras, Coahuila, Mexico—the same Health Center where Ms. Garza Mancha worked as a nurse. *See id.*, Ex. 5.

On March 12, 2014, Plaintiff applied for a U.S. passport and submitted his Texas birth certificate as proof of birth in the United States. On November 25, 2014, the U.S. Department of State denied his application.

In 2016, Plaintiff requested a certified copy of his Texas birth certificate from the Texas State Registrar ("the Registrar"). The Registrar initially denied Plaintiff's request because of the existence of his Mexican birth certificate, but Plaintiff successfully appealed to the Texas Department of Health ("TDH"). After hearing testimony and reviewing evidence, an administrative judge found Plaintiff had established he was born in Eagle Pass, Texas, and TDH ordered the release of his birth certificate without any notations or addendums on November 6, 2017.

On November 15, 2017, Plaintiff again applied for a U.S. passport. The U.S. Department of State again denied his request on February 21, 2019. On April 22, 2019, Plaintiff requested re-adjudication of his application, which the U.S. Department of State also denied on September 9, 2019.

According to Plaintiff, he satisfies all the requirements for U.S. citizenship and issuance of a U.S. passport. On November 21, 2019, Plaintiff filed suit against Defendant for denial of rights and privileges as a national pursuant to 8 U.S.C. § 1503(a).[1] *See* ECF No. 1. Plaintiff now moves for summary judgment. ECF No. 34. Defendant opposes the motion. ECF No. 36.

## DISCUSSION

### I.    Summary Judgment Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear

---

[1] The Court previously dismissed Plaintiff's claim under the Citizenship Clause of the Fourteenth Amendment for lack of subject matter jurisdiction. *See* ECF No. 24 at 4–11.

the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may

not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.    Analysis

In an action under 8 U.S.C. § 1503(a), the plaintiff bears the burden of proving, by a preponderance of the evidence, that he is an American citizen. *Garcia v. Clinton*, 881 F. Supp. 2d 807, 811 (S.D. Tex. 2012) (citing *De Vargas v. Brownell*, 251 F.2d 869, 870–1 (5th Cir. 1958)); *see also* 22 C.F.R. § 51.40 ("The [passport] applicant has the burden of proving that he or she is a U.S. citizen or non-citizen national."). Accordingly, Plaintiff bears the burden of proving that no genuine issue of material fact exists as to his birthplace.

Plaintiff contends that he is entitled to summary judgment because, collectively, his Texas birth certificate, his baptismal record, Ms. Garza Mancha's testimony, and Ms. Crosby's affidavit and birth records, demonstrate by a preponderance of the evidence that he was born in the United States. *See* ECF No. 34. "Other than the Mexican birth registration," he argues, "Defendant has no other record showing that Plaintiff was born in Mexico." *Id.* at 8.

But the very existence of the Mexican birth certificate creates a genuine issue of fact that precludes summary judgment in this case. Plaintiff admits as much in his amended complaint, in which he alleges that, after hearing testimony and reviewing the evidence, the TDH administrative judge who ordered the release of his Texas birth certificate "was convinced that the Texas birth certificate *should be accorded greater weight* because it was signed by both Plaintiff's mother and the midwife and both had personal knowledge of Plaintiff's birth," compared to the Mexican birth record, which was registered by "a person with no personal knowledge of Plaintiff's birth." ECF No. 12 ¶¶ 15–16 (emphasis added). The Court, however, may not weigh the evidence in ruling on

a motion for summary judgment, *Reeves*, 530 U.S. at 150, and must review all facts in the light most favorable to the nonmoving party. *Sanford*, 555 F.3d at 181. Thus, even if the summary judgment record in this case were identical to the record at the TDH hearing, granting summary judgment here would be inappropriate because it would require the Court to weigh the evidence in much the same way that Plaintiff alleges the administrative judge did during the TDH proceedings.

Moreover, as Defendant notes, the records are not identical. Defendant raises multiple discrepancies between the evidence introduced at the administrative hearing, the allegations in Plaintiff's amended complaint, and the assertions in his motion for summary judgment. For example, at the administrative hearing, Plaintiff testified that his mother remembered that Ms. Crosby's son was present during his birth and was playing music when Plaintiff was born. *See* ECF No. 36-2, TDH Hr'g Tr. 37:13–40:2. In his motion for summary judgment, however, Plaintiff insists that only three people were present at his birth: his mother, his paternal grandmother, and Ms. Crosby. *See* ECF No. 34 at 6–7. This assertion further contradicts Plaintiff's amended complaint, in which he appears to discredit the Mexican birth record registered by his grandmother by describing Ms. Garza Mancha as "a person with no personal knowledge of Plaintiff's birth." ECF No. 12 at 16.

Far from a person without personal knowledge of the event, Ms. Garza Mancha testified in her deposition in this case that, after receiving a phone call from Ms. Crosby that her daughter-in-law was in labor, she obtained permission to leave her shift at the Health Center in Piedras Negras, walked twenty minutes across the border to Ms. Crosby's home in Eagle Pass, and arrived in time to deliver Plaintiff herself and cut his umbilical cord. ECF No. 34-2, Ex. 2, Garza Mancha Dep. 33:5–12, 34:6–21, 35:4–7. She went on to explain that she later registered Plaintiff's birth in Mexico as having occurred at the Health Center in Piedras Negras rather than Eagle Pass so that

he would not be drafted to go to war for the United States. *Id.* 44:12–22; 46:4–12. Ms. Garza Mancha further testified that, before registering the birth in Mexico, she informed the civil judge that Plaintiff had actually been born in the United States. *Id.* 45:9–24; 47:18–25; 63:9–15. The judge told her that Plaintiff's birth in the United States would not be a problem for the registration in Mexico. *Id.* 45:9–24.

While these discrepancies are not necessarily fatal to Plaintiff's claim of U.S. citizenship, they are fatal to his motion for summary judgment because disregarding them would require the Court to make improper credibility determinations. The only living witness to Plaintiff's alleged birth in Eagle Pass is the same person who filed the allegedly false birth certificate in Mexico. In sum, Defendant argues, "[t]he outcome of this case depends in large part upon the Court's determination of [Ms. Garza Mancha]'s credibility and the proper weight to be assigned to the documentary evidence. This cannot be assessed at the summary judgment stage." ECF No. 36 at 10. The Court agrees.

## CONCLUSION

The Court concludes that Plaintiff has failed to meet his burden of establishing that there is no genuine issue of material fact concerning his birthplace. Accordingly, Plaintiff's motion for summary judgment (ECF No. 34) is **DENIED.**

It is so **ORDERED**.

**SIGNED** this 25th day of February, 2021.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE